UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANFORD P. BRYANT,<br>　　　　　　　　　　　　Plaintiff,<br>v.<br>TIM OCHOA, Warden, et al.,<br>　　　　　　　　　　　　Defendants. | CASE NO. 07cv200 JM (PCL)<br><br>**REPORT & RECOMMENDATION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>[FED. R. CIV. P. 12(b)(6)] |

## I. INTRODUCTION

On March 19, 2008, Plaintiff Stanford P. Bryant ("Plaintiff"), a prisoner proceeding pro se and in forma pauperis, filed a Second Amended Complaint (SAC) against Defendants Best, Barra, Bastida, Brown, Gonzales, Harmon, Hopper, Janda, Jimenez, McNair, Mangum, Mudra, Ochoa, Olivarez, Raske, Ries, Stanford, Williams, Carnes, Ryan, and Romero for violation of his civil rights under Title 42, United States Code § 1983. (Docs. 44 and 59.) On May 1, 2008, Defendants moved to dismiss Plaintiff's SAC for failure to state a cognizable constitutional claim under the First and Fourteenth Amendments and on qualified immunity grounds. (Doc. 47.) On June 26, 2008, Plaintiff filed an opposition to Defendants' motion to dismiss. (Doc. 58.) Upon reviewing the SAC, Defendants' motion, and Plaintiff's opposition, the Court recommends that Defendants' motion be GRANTED in part and DENIED in part.

## II.  BACKGROUND

Plaintiff, an inmate currently residing at Calipatria State Prison and proceeding pro se, filed a section 1983 complaint alleging violations of his First, Eighth, and Fourteenth Amendment rights. (Doc. 1.)  Defendants moved to dismiss Plaintiff's Complaint (doc. 29), and Plaintiff filed a First Amended Complaint in July 2007, alleging violations of his First and Fourteenth Amendment rights (doc. 30.)  Defendants moved to dismiss Plaintiff's First Amended Complaint (doc. 31), and this Court granted the motion in part and denied it in part, allowing Plaintiff leave to amend his complaint. (Doc. 42.)  Plaintiff filed his Second Amended Complaint (SAC) in March 2008, alleging again that various correctional officers and their superiors at the Calipatria State Prison violated his right to be free from retaliatory punishment for engaging in conduct protected by the First Amendment and violated his Due Process rights under the Fourteenth Amendment.  (Doc. 44, at 11-12.)

Plaintiff alleges that, on May 10, 2005, Defendants D. Best and J. Bastida, both correctional officers, disciplined him in a retaliatory manner by beating him and locking him in a holding cell for exercising his First Amendment right of filing a civil rights complaint in state court against Best's wife. (Id. at 20.)  Plaintiff contends that Defendant Best rammed Plaintiff into the holding cell's metal door and that Defendant Bastida kicked Plaintiff's head away from the doorway at the May 10, 2005 incident. (Id. at 20-21.)  Afterwards, Defendant B.C. Ries asked Plaintiff if he wanted to file a complaint against Defendants Best and Bastida, but Plaintiff did not do so because Defendant Brown allegedly told Plaintiff that he would be placed in administrative segregation if he filed a complaint against him for the retaliatory conduct.  (Id. at 22.)  Plaintiff also alleges that Defendant Best falsified the CDC 115-Rule Violation Report, Log No. 05-05-C-003, on the May 10, 2005 incident by stating that Plaintiff inappropriately engaged in physical contact with Defendant Best.  (Id. at 23.)  Defendants Brown and G.D. Stanford, both correctional officers, reviewed and signed the allegedly falsified report in retaliation for his prior use of the grievance system.  (Id. at 23-24.)  On May 29, 2005, Defendant R. Hopper conducted a disciplinary hearing on the CDC 115-Rule Violations Report and allegedly did not allow Plaintiff to make an appearance to defend his position as required by state law.  (Id. at 24.)  Defendant Hopper then imposed a 30-day loss of day-room privileges, a 90-day loss of phone privileges, and a 10-day loss of yard privileges on Plaintiff for the rule violation.  (Id.)  Plaintiff alleges that Defendants G.

Janda and T. Ochoa, (id. at 25), and Defendant Hopper, (id. at 43), knowingly allowed the disciplinary due process violation to stand uncorrected in order to achieve their goals of covering up the truth and to silence Plaintiff's exercise of his First Amendment rights.  Plaintiff also contends that the falsified reports "are depriving or restraining Plaintiff's state-created liberty interest to parole." (Id. at 54-55.)

On a separate occasion on May 29, 2005, Defendant J.E. Olivarez, a correctional officer, allegedly falsified the CDC 115-Rule Violation Report, Log No. 05-05-C-038, which stated that Plaintiff threatened Olivarez and tried to pull away from him during an escort. (Id. at 26.)  Defendant Olivarez allegedly told Plaintiff, "I'm gonna make sure you go to the hole. I'm gonna say, 'I fear for my safety; you threatened me.' You want to fight us; well, we're fighting back!" (Id. at 27.)  Plaintiff asserts that Defendant Olivarez's actions were part of an on-going retaliation against Plaintiff for exercising his First Amendment right to file grievances against Defendants Stuart J. Ryan, M. Jimenez, and D. Best. (Id.)  Plaintiff alleges that Defendant Olivarez's falsification was casually related to the on-going retaliation because it occurred nineteen days after Defendant Jimenez was served with Plaintiff's lawsuit. (Id.)  Plaintiff was placed in administrative segregation and apparently was held there against his will from May 29, 2005 to August 4, 2005 for this incident. (Id. at 36.y)  During his time in administrative segregation, Defendant K. Williams allegedly threatened Plaintiff with tampered food and falsely accused Plaintiff of threatening staff in order to silence Plaintiff's First Amendment rights. (Id. at 34.)

On June 15, 2005, Plaintiff appeared before a committee to consider his release from administrative segregation. (Id. at 35.)  The committee was led by Defendants Stuart J. Ryan, Warden, and Gerald J. Janda, Associate Warden, who found that placing Plaintiff in segregation housing and retaining him there pending disposition of the CDC 115-Rule Violation Report, Log No. 05-05-C-038, was appropriate. (Id. at 35-36.)  Plaintiff alleges that both Defendants Ryan and Janda held Plaintiff in administrative segregation to chill Plaintiff's exercise of his First Amendment rights. (Id. at 36.)

Plaintiff asserts that Defendant J. Carnes was assigned as Plaintiff's investigative employee regarding the May 29, 2005 incident. (Id. at 29.)  Plaintiff asserts that Defendant Carnes refused to help Plaintiff collect names or interview witnesses for Plaintiff's defense. (Id. at 29-30.)  Plaintiff also alleges that Defendant Carnes disposed of Plaintiff's property, which was to be used as evidence for his

defense, in retaliation for his prior use of the grievance process.  (Id. at 45-46.)  Moreover, Plaintiff asserts that Defendant D.R. Gonzales refused to allow Plaintiff to call witnesses or to provide a "staff assistant" for his defense at the disciplinary hearing.  (Id. at 29-30.)  Defendant Gonzales offered Plaintiff to postpone the hearing for failure to give the required 24-hour notice for preparation purposes, but Plaintiff waived his right to prepare for the hearing.  (Id. at 31.)  Plaintiff alleges that Defendant Gonzales falsely stated in the rules report that Plaintiff chose not to call any witnesses at the hearing. (Id. at 32-33.)  However, Plaintiff states that he did question Defendant K. Williams, who said at the hearing that Plaintiff did threaten him and Defendant Olivarez.  (Id. at 34.)  Plaintiff also questioned Defendant Williams about his failure to submit a CDC 837 written report, to which Williams responded that he wasn't required to submit one for this incident.  (Id.)  After a review and an approval of the allegedly false CDC 115-Rule Violation Report, Log No. 05-05-C-038, by Defendants M. McNair, H. Mangum, B.C. Ries, D.R. Gonzales, M. Jimenez, R. Harmon, and J. Janda, all correctional officers, as well as by Defendant Tim Ochoa, Deputy Chief Warden, Defendant Gonzales found Plaintiff guilty of a lesser charge of "Behavior that may lead to violence."  (Id. at 36.)  Plaintiff received 30-day loss of phone privileges and a 10-day loss of yard privileges for the charge.  (Id. at 32.)  At the conclusion of the hearing, Defendant M. Jimenez allegedly told Plaintiff, "Maybe next time you will think twice about filing a 602 or lawsuit."  (Id.)

Plaintiff was scheduled for release from administrative segregation twice in August, 2005.  (Id. at 15.)  Plaintiff alleges that at an administrative review hearing on August 5, 2005, Defendant J. Mudra threatened Plaintiff with an indeterminate segregated housing unit term at either the Pelican Bay State Prison or the High Desert State Prison.  (Id. at 26.)  Plaintiff alleges that Defendant Mudra made such threats and falsified a report to force Plaintiff back into a hostile environment and to silence his First Amendment rights.  (Id. at 26.)  Because Plaintiff "could not walk as other prisoners without a prison official approaching him aggressively," Plaintiff chose to stay in administrative segregation until he was transferred to another prison.  (Id. at 15.)

While in administrative segregation, Plaintiff alleges that Defendant R. Romero, correctional officer, called Plaintiff a P.C., meaning pressure case, in front of the other prisoners in retaliation for his filing a lawsuit.  (Id. at 37.)  Plaintiff also alleges that Defendant M. Barra, correctional officer,

mishandled his property and refused to give Plaintiff a quarterly package form for no other reason than to retaliate against Plaintiff for exercising his First Amendment rights. (Id. at 38.) After Plaintiff submitted a CDC 602 grievance for this action, Defendant M. Barra dropped off the quarterly package form under the cell door and told Plaintiff, "Don't be surprised if some type of contraband is found in your property . . . if you think about filing anything against me!" (Id. at 39.)

Finally, Plaintiff alleges that Defendant K. Raske, a library technical assistant, refused to provide him with assistance in finding legal materials, refused to make copies of Plaintiff's legal documents, threatened to treat Plaintiff's mail differently from everybody else's, and tampered with and stole Plaintiff's mail. (Id. at 40-41.) Plaintiff alleges that he did so in a retaliatory manner to silence Plaintiff's First Amendment rights. (Id. at 41.)

In the instant lawsuit, Defendants Ochoa, Ryan, and Janda have been sued in their official capacities, and all defendants have been sued in their individual capacities. (Id. at 2-5.) All defendants have been sued for violations of Plaintiff's First Amendment rights, and some Defendants have been sued for violations of Plaintiff's rights under the Due Process clause. (Id. at 56-57.) Plaintiff has requested (1) a declaratory judgment that defendants violated his rights under the First and Fourteenth Amendments; (2) an injunction prohibiting defendants from retaliating against him in the future, expunging the false disciplinary convictions, and transferring him to another prison; and (3) both compensatory and punitive damages, including for mental abuse and emotion distress. (Id. at 57, 50.)

### III. STANDARD OF REVIEW

FED. R. CIV. P. 12(b) expressly enumerates a list of six defenses that can be asserted in a motion to dismiss, including for "failure to state a claim upon which relief can be granted," FED. R. CIV. P. 12(b)(6). Under 12(b)(6), a complaint may be dismissed for failure to state a cognizable legal theory or for failure to state sufficient facts under a cognizable legal theory. See Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).

In reviewing the sufficiency of a complaint, the court must assume the truth of all factual allegations and construe them in light most favorable to the nonmoving party. Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002). The court may consider the facts alleged in the complaint, documents attached to the complaint, documents incorporated by reference in the complaint, and matters of which

the court takes judicial notice. U.S. v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). Additionally, the court may hypothesize facts, "consistent with the complaint, that would make out a claim." Graehling v. Village of Lombard, Ill., 58 F.3d 295, 297 (7th Cir. 1995). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987). Furthermore, "[i]f the pleadings establish facts compelling a decision one way, that is as good as if depositions and other expensively obtained evidence on summary judgment establishes the identical facts." Weisbuch v. County of Los Angeles, 119 F.3d 778, 783 n. 1 (9th Cir. 1997).

## IV. DISCUSSION

**A. Plaintiff Has Stated First Amendment Retaliation Claims Against All Defendants**

Defendants contend that Plaintiff has failed to state cognizable First Amendment retaliation claims against them. (Doc. 47-2, at 9-15.)

A prison official who acts against an inmate in retaliation for using the prison grievance process or pursuing civil rights litigation may be in violation of the First Amendment. Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005); Lucero v. Hensley, 920 F. Supp. 1067, 1076 (C.D. Cal. 1996). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such conduct (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes, 408 F.3d at 567-68. Adverse actions that are sufficient to ground a First Amendment retaliation claim include confiscating and destroying personal property, id. at 568; repeatedly threatening "transfer because of [the prisoner's] complaints about the administration of the [prison] library," Gomez v. Vernon, 255 F.3d 1118, 1127 (9th Cir. 2001); imposing a ten-day period of confinement and loss of television because of a correctional officer's false allegation that the prisoner breached prison regulations, Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997); and calling a prisoner a "snitch" in front of other prisoners for filing grievances against prison officials in order to subject prisoner to life-threatening retaliation by other inmates, Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989). At the pleading stage, a plaintiff need not "demonstrate a total chilling of his First Amendment rights to file grievances and to

pursue civil rights litigation in order to perfect a retaliation claim." Rhodes, 408 F.3d at 568. In other words, the fact that an inmate has fulfilled the legal requirements necessary to pursue his cause of action in federal court does not mean that his First Amendment rights were not chilled. Id. at 569.

Here, Plaintiff has stated claims against Defendants Best and Bastida, who allegedly retaliated against Plaintiff by beating him and locking him in a holding cell because he exercised his First Amendment right of filing a civil rights complaint. The fact that Plaintiff eventually filed a grievance against them does not necessarily mean, as Defendants contend, that Plaintiff's First Amendment rights were not chilled. See Rhodes, 408 F.3d 568. Plaintiff also stated a First Amendment claim against Defendant Best for falsely charging him with a rule violation for the May 10, 2005 incident, and against Defendants Brown, Stanford, Janda, Hopper, and Ochoa for knowingly approving the false report in retaliation for his prior use of the grievance system. See Hines, 108 F.3d at 267.

Similarly, Plaintiff has also stated claims against Defendant Olivarez, who allegedly falsely charged Plaintiff with a rule violation for a separate incident on May 29, 2005 in retaliation for his prior use of the grievance system, and against Defendants McNair, Mangum, Ries, Gonzales, Jimenez, Harmon, and Janda for knowingly approving the false report in order to silence Plaintiff's First Amendment rights. And Plaintiff has stated claims against Defendants Ryan and Janda, who allegedly kept Plaintiff in administrative segregation to chill Plaintiff's exercise of his First Amendment rights.

With regard to Plaintiff's time in administrative segregation, Plaintiff has stated a cause of action against Defendant Williams, who allegedly threatened Plaintiff with tampered food and falsely accused him of threatening staff in order to silence his First Amendment rights. Plaintiff also has stated a cause of action against Defendant Romero, who allegedly called Plaintiff a pressure case in front of other prisoners in retaliation for his filing a lawsuit. See Valandingham, 866 F.2d at 1138. Furthermore, Plaintiff has stated causes of action against Defendant Barra, who allegedly mishandled Plaintiff's personal property, Defendant Raske, who allegedly tampered and stole Plaintiff's mail, and Defendant Carnes, who allegedly disposed of Plaintiff's property that was to be used as evidence for his defense, in order to retaliate against Plaintiff for exercising his First Amendment rights. See Rhodes, 408 F.3d at 568.

1   Finally, Plaintiff has stated a First Amendment claim against Defendant Mudra for allegedly
2 threatening Plaintiff with an indeterminate segregated housing unit term at a different prison in order to
3 silence Plaintiff's First Amendment rights.  See Gomez, 255 F.3d at 1127.
4 **B. All Fourteenth Amendment Due Process Claims Should Be Dismissed**
5   Defendants contend that Plaintiff has failed to state cognizable Fourteenth Amendment Due
6 Process claims against them.  (Doc. 47-2, at 16.)
7   When a prisoner is subject to disciplinary proceedings for violations of prison rules, the full
8 panoply of due process rights due a criminal defendant do not apply.  Wolff v. McDonnell, 418 U.S. 539,
9 556 (1974).  While a prisoner charged with a disciplinary violation is entitled to such protections such as
10 "the rights to call witnesses, to present documentary evidence and to have a written statement by the
11 factfinder as to the evidence relied upon and the reasons for the disciplinary action taken," these
12 protections "adhere only when the disciplinary action implicates a protected liberty interest in some
13 'unexpected matter' or imposes an 'atypical and significant hardship on the inmate in relation to the
14 ordinary incidents of prison life.'"  Serrano v. Francis, 345 F.3d 1071, 1077-78 (9th Cir. 2003) (quoting
15 Sandin v. Connor, 515 U.S. 472, 484 (1995)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir.
16 2003) ("If the hardship is sufficiently significant, then the court must determine whether the procedures
17 used to deprive that liberty satisfied Due Process.") (citations omitted).
18   Few protected liberty interests have been identified by the Supreme Court.  See, e.g., Washington
19 v. Harper, 494 U.S. 210, 221-22 (1990) (identifying the freedom from involuntary administration of
20 psychotropic drugs as a protected liberty interest); Vitek v. Jones, 445 U.S. 480, 493 (1980) (identifying
21 the freedom from transfer to a mental hospital as a protected liberty interest); Wolff v. McDonnell, 418
22 U.S. 539, 561-563 (1974) (identifying freedom from solitary confinement as a protected liberty interest).
23 On the other hand, the Supreme Court has found that segregated confinement for thirty days as a prison
24 disciplinary measure does not implicate a due process liberty interest.  Sandin v. Conner, 515 U.S. 472,
25 487 (1995).  The Ninth Circuit, interpreting Sandin, has described a three-pronged guide to determining
26 whether a prison hardship is atypical and significant so as to implicate due process concerns: "(1)
27 whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative
28 segregation and protective custody,' and thus comported with the prison's discretionary authority; (2) the

duration of the condition, and the degree of restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence." <u>Serrano</u>, 345 F.3d at 1078 (finding that prisoner's physical disability, coupled with administrative segregation for nearly two months in a unit that was not designed for disabled persons, gave rise to a protected liberty interest); <u>see also</u> <u>Resnick v. Hayes</u>, 213 F.3d 443, 448 (9th Cir. 2000) (finding no liberty interest in being confined in special housing unit following disciplinary charges for drug use); <u>Schoka v. Demosthenes</u>, 977 F.2d 591 (9th Cir. 1992) (finding "no constitutional or inherent right to parole").

      Here, Plaintiff has not stated Fourteenth Amendment causes of action against any of the named defendants. Plaintiff has alleged that Defendants Best, Bastida, Brown, Stanford, Hopper, Janda, and Ochoa approved an allegedly false rule violation report for the May 10, 2005 incident, subjecting him to a 30-day loss of day-room privileges, a 90-day loss of phone privileges, and a 10-day loss of yard privileges. Moreover, Plaintiff alleges that he was falsely charged with a separate rule violation on May 29, 2005 and was placed in administrative segregation on that date. Plaintiff asserts that Defendants Ryan, Janda, and Mudra inappropriately elected to keep Plaintiff in segregation housing pending disposition of the May 29, 2005 rule violation charge. Plaintiff claims that Defendant Carnes, who was assigned as Plaintiff's investigative employee for the May 29, 2005 incident, refused to help him collect names or interview witnesses for Plaintiff's defense regarding the May 29, 2005 incident. Moreover, Plaintiff claims that Defendant Gonzales did not allow Plaintiff to call witnesses for his defense at the disciplinary hearing and falsely stated in the rules report that Plaintiff chose not to call any witnesses. After a review and an approval of the allegedly false rules report by Defendants McNair, Mangum, Ries, Gonzales, Jimenez, Harmon, Janda, and Ochoa, Defendant Gonzales found Plaintiff guilty of a lesser charge of "Behavior that may lead to violence" and sentenced Plaintiff to a 30-day loss of phone privileges and a 10-day loss of yard privileges for the charge. Furthermore, Plaintiff claims that Defendants are depriving Plaintiff's right to parole. However, in all of these claims, Plaintiff has not received the type of disciplinary action that implicates or deprives a liberty interest protected by the Due Process clause. Neither being placed in administrative segregation for approximately two months nor receiving loss of yard, day-room, and phone privileges for violating prison rules is a "atypical and significant" or "unexpected" hardship that would implicate Due Process concerns. The forms of

discipline used on Plaintiff were minor in nature and short in duration, and they did not add any time to his prison sentence.  Even though Plaintiff allegedly has been denied certain procedural rights during the disciplinary process, these rights do not adhere in such a way that Plaintiff can vindicate them using the Due Process clause of the Fourteenth Amendment.  Thus, all of the due process claims in Plaintiff's SAC should be dismissed.

**C. Defendants Are Not Entitled to Qualified Immunity**

Defendants claim that they are entitled to qualified immunity because Plaintiff failed to adequately allege a constitutional violation under the First or Fourteen Amendments.  (Doc. 47-2, at 20-21.)

A qualified immunity analysis is a two-step inquiry.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  The first step is determining whether, under the facts alleged by the plaintiff, there was a violation of a constitutional right.  Id.  If a violation of a constitutional right is established, the second step is whether the right was clearly established.  Id.  A right is clearly established when it is clear to a reasonable officer that his conduct was unlawful in the applicable situation.  Id. at 202.  In the Ninth Circuit, "our case law is abundantly clear that the infliction of harms other than a total chilling effect [on First Amendment rights] can establish liability."  Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005).  If the plaintiff has alleged a violation of a constitutional right that is clearly established, then a claim to qualified immunity should be denied.  Id. at 570.

Here, Plaintiff has stated a claim for retaliation under the First Amendment, a clearly established constitutional prohibition, as to all Defendants.  At this stage in the litigation process, where Plaintiff's allegations must be taken at face value, Defendants' claim to qualified immunity should be denied.

**D. Plaintiff Has Alleged More Than a *De Minimis* Injury**

Defendants contend that because Plaintiff has not alleged any physical injury, he is not entitled to damages for mental and emotional distress.  (Doc. 47-2, at 21-22.)  Under 42 U.S.C. § 1997e(e), "[n]o federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury."  The Ninth Circuit has interpreted § 1997e(e) to require the plaintiff to demonstrate a physical injury more than *de minimis* to be entitled to damages for mental or emotional distress.  Oliver v. Keller, 289 F.3d

623, 627 (9th Cir. 2002) (affirming summary judgement dismissing a claim for emotional injury where physical injuries were "nothing too serious").

Here, Plaintiff has alleged that he was rammed into a metal door and kicked in the head by correctional officers in retaliation for exercising his First Amendment rights. At the pre-answer stage of the litigation process, the Court must take at face value the factual allegations made by Plaintiff and construe them liberally in his favor. While "nothing too serious" could have resulted from Defendants actions, the Court must assume at this point that more than a *de minimis* physical injury resulted from Defendants allegedly ramming him into a metal door and kicking his head. Thus, the Court does not recommend dismissal of the claim for damages for mental and emotional distress at this point, but would invite Defendants to reassert this defense in a post-discovery motion should the facts support it.

## V.  CONCLUSION

For the reasons set forth above, the Court recommends the following:  (1) the Fourteenth Amendment claims against all Defendants should be dismissed; (2) the First Amendment claims against all Defendants should not be dismissed; (3) Defendants are not entitled to qualified immunity at this time; and (4) claim for damages for mental and emotional distress should not be dismissed.

This Report and Recommendation is submitted to United States District Judge Jeffrey T. Miller, pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.  Any written objections to this Report and Recommendation must be filed with the Court and a copy served on all parties on or before **December 5, 2008.**  The document should be captioned "Objections to Report and Recommendation."  Any reply to the objections shall be served and filed on or before **December 17, 2008.**  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of this Court's order. Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

IT IS SO ORDERED.

DATED: November 19, 2008

Peter C. Lewis
U.S. Magistrate Judge
United States District Court

cc: District Judge Miller; all counsel of record